IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

EASTERN DIVISION

| | |
|---|---|
| ACCESS NOW, INC., on behalf of its members; R. DAVID NEW; and STEPHEN THÉBERGE, <br><br> Plaintiffs, <br><br> v. <br><br> OTTER PRODUCTS, LLC, <br><br> Defendant. | Civil Action No. <br><br> COMPLAINT FOR INJUNCTION |

**COMPLAINT FOR PERMANENT INJUNCTION**
**REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF**
**DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Access Now, Inc., R. David New, and Stephen Théberge (collectively, "Plaintiffs") seek a permanent injunction requiring a change in Otter Products, LLC's ("Defendant" or "Otter Products") corporate polices to cause Defendant's websites to become, and remain, accessible to individuals with disabilities.  In support thereof, Plaintiffs respectfully assert as follows:

**INTRODUCTION**

1.      "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ.,    Labor    &    Pensions,    at    3    (May    14,    2013),    *available    at* https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed May 22, 2017).

2.     Otter Products is a leading consumer electronics accessory company that through different brands produces water resistant, shock resistant, and drop resistant cases for mobile devices. Otter Products offers their products for online sale and delivery through www.otterbox.com and www.lifeproof.com.

3.     Otter Products owns, operates, and controls these two (2) websites (collectively "Websites")

4.     At these Websites, consumers can purchase items, create an account, locate retailers, and access customer service. Consumers are able to research and compare products and shop by device. Otter Products also offers discounts if the consumer signs up for their email list in addition to special sales and free shipping offers.

5.     Unfortunately, Otter Products denies approximately 7 million[1] Americans who are visually impaired access to its Websites' goods, content and services because much the Websites are largely incompatible with screen reader programs these Americans use to navigate an increasingly ecommerce world.

6.     Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, education, and meal delivery have become commonplace.

7.     Plaintiffs bring this civil rights action against Otter Products to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed May 4, 2017).

services, facilities, privileges and advantages; (2) not provide such persons with benefits that are unequal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

8.      By failing to make its Websites available in a manner compatible with computer screen reader programs, Otter Products, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

9.      Because Otter Products' Websites have never been accessible and because Otter Products does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring:

   a)   that Otter Products retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Websites so they comply with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");[2]

   b)   that Otter Products work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

---

[2]The Department of Justice has utilized the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). The WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility," *see, e.g.*, Department Commentaries, 75 Fed. Reg. at 43465, and the Department of Justice, through myriad enforcement actions, has consistently used the WCAG 2.0 Level AA Standards to ensure the full and equal enjoyment of websites for persons with disabilities.

c) that Otter Products work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Defendant's Websites continue to comply with WCAG 2.0 AA on an ongoing basis;

d) that Otter Products work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Otter Products' Websites continue to comply with WCAG 2.0 AA on an ongoing basis; and,

e) that Otter Products work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems.

10. Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

11. The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

12. Otter Products purposefully targets and otherwise solicits business from Massachusetts residents through its Websites. Because of this targeting, it is not unusual for Otter Products to conduct business with Massachusetts residents. In fact, the opposite is true: Otter

Products derives substantial revenue from transactions in Massachusetts, having more than a slight effect on the Commonwealth's commerce as a result.

13.     Venue in the District of Massachusetts is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Théberge's claims occurred.

14.     Assignment to the Eastern Division is appropriate pursuant to Rule 40.1(D) of the Local Rules of the United States District Court for the District of Massachusetts.

**PARTIES**

15.     Plaintiff Access Now is a non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Access Now has members representing 47 states, including residents of the Commonwealth of Massachusetts.

16.     One of Access Now's primary purposes is to ensure that public accommodations are accessible to and useable by its members, and to ensure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations.

17.     Access Now furthers this mission in a variety of ways, including seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act.

18.     Access Now also devotes significant resources to raise awareness and increase opportunities for people with disabilities. For example, Access Now and its members host and/or

sponsor events such as "Lights Out," a dining in the dark experience. Access Now and its members also host and/or sponsor Biz-Ability Luncheons recognizing organizations and individuals who have improved awareness about people living with disabilities, enhanced independent living, and developed assistive technologies, among other important contributions.

19.     Access Now has strongly advocated for access to the online goods, content, and services that various industries make available via the Internet, but which are often incompatible with the screen reader programs, and other assistive technology, its members use. For example, Access Now filed suit against HSBC North America Holdings, Inc., alleging the bank's website was not compatible with screen reader software, thus blocking blind and visually impaired users from fully accessing the full range of personal online banking services available to sighted users. (*Frazier, et al. v. HSBC North America Holdings, Inc.*, No. 2:16-cv-01665-AJS (W.D. Pa. Nov. 2, 2016) (Doc. No. 1). In addition to financial lending, Access Now has pursued increased accessibility to the online content and services offered by the hospitality industry (*Frazier, et al. v. Omni Hotels Management Corporation*, No. 2:17-cv-00012-AJS (W.D. Pa. Jan. 4, 2017) (Doc. No. 1), meal delivery (*Access Now, Inc. v. OmahaSteaks.com, Inc.*, No. 2:17-cv-00269-AJS (W.D. Pa. Mar. 1, 2017) (Doc. 1), and online retail industries (*Gathers, et al. v. Keurig Green Mountain, Inc.*, No. 1:17-cv-10236-NMG (D. Mass. Feb. 13, 2017), among others.

20.     Plaintiff New is, and at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is, and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Plaintiff Access Now.

21.     Plaintiff Théberge is and, at all times relevant hereto, has been a resident of Attleboro, Massachusetts. Plaintiff Théberge suffers from cataracts and glaucoma. His vision disability has worsened since birth, rendering him blind as a result of multiple surgeries. He is a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff Théberge is also a member of Access Now.

22.     Defendant Otter Products is a Colorado limited liability company with its principal place of business located at 209 S. Meldrum Street, Fort Collins, Colorado 80521. Otter Products' Websites are a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

23.     While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

24.     Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

I.     **Otter Products' Online Content**

25.     Otter Products' Websites allow consumers to browse and purchase products available for home delivery. The Websites provide detailed product information, complete with photographs and product descriptions, as well as other personalized shopping services, including search and order tracking.

26.     Consumers may use the Websites to connect with the Defendant on social media, using sites such as Facebook, Instagram, Twitter, and YouTube.

27.     The Websites also include important information regarding Delivery and Return Policies, Terms of Use, Privacy Policies, and Specials.

II.    **Harm to Plaintiffs**

28.     Access Now has standing as an association on behalf of its members. Access Now's members, including Plaintiffs New and Théberge, have standing to sue as individuals because they have been, and continue to be, harmed by Otter Products' discriminatory policies. Advocating on behalf of its members is germane to Access Now's interests of ensuring that important tools of daily life, such as websites, are accessible to people who are blind or visually-impaired.

29.     Mr. New has visited Otter Products' Websites. Unfortunately, because of Otter Products' failure to build its Websites in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

30.     Mr. New has attempted to access the Websites with the same screen reader program he uses to browse the Internet, but found them to be largely unusable due to various accessibility barriers. For example:

(a)     Multiple buttons on the Websites, including on the Homepage of www.otterbox.com, are missing proper labels describing their action to a screen reader user. Without a proper label, screen reader users do not know what happens after clicking a button.

(b)     While using his JAWS screen reader program, Mr. New was unable to interact with any content below the "Explore Lifeproof" heading on the www.lifeproof.com Homepage.

(c)     The pages selling iPhone 7 cases at www.lifeproof.com are difficult—if not impossible—to navigate. Many buttons are labeled with the same text describing the same link, such as "Learn More" or "Shop Now." Unfortunately, without unique and discernible labels, like "Learn More about Product X" or "Shop Now for Product Y," screen reader users cannot navigate Otter Products' online storefront as can sighted users.

31.     Plaintiff Théberge has visited Otter Products' Websites. Unfortunately, because of Otter Products' failure to build its Websites in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

32.     Mr. Théberge attempted to access the Websites with the same screen reader program he uses to browse the Internet, but found them to be largely unusable due to various accessibility barriers. For example,

(a)     Several buttons on the Homepage of www.otterbox.com are missing proper labels describing their action to a screen reader user. Without a proper label, screen reader users do not know what happens after clicking a button.

(b)     Mr. Théberge encountered a "Sign Up" window at www.otterbox.com that blocked his screen reader's access to the remaining website.

(c)     Otter Products' www.otterbox.com site blocks Mr. Théberge from signing up to receive special promotions that Otter Products circulates via email.

(d)     While navigating www.lifeproof.com, Mr. Théberge encountered a lightbox (a type of Pop Up window), asking him to "sign up for a light dusting of email." He could not use his screen reader program to close or "x-out" of this form, blocking him from the rest of the website.

33.     As a result of visiting Otter Products' Websites and from investigations performed on their behalf, Plaintiffs are aware the Websites include at least the following barriers blocking their use by consumers with visual disabilities.

(a)     A text equivalent for every non-text element is not provided;

(b)     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

(c)     On pages where a user can move to a part of a page via the keyboard, the user is unable to move away from that part of the page using only the keyboard;

(d)     If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

(e)     A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

(f)     Web pages lack titles that describe their topic or purpose;

(g)     The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(h)     Changing the setting of any user interface component may automatically cause a change of context unless the user has been informed before using the component;

(i)     Labels or instructions are not always provided when content requires user input;

(j)     In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(k)     The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

34.     These barriers, and others, have denied Plaintiffs full and equal access to all of the services the Websites offer, and now deter them from attempting to use the Websites. Still, Plaintiffs would like to, and intend to, attempt to access Otter Products' Websites in the future. Plaintiffs' disabilities, and the challenge of traveling to and shopping in traditional brick-and-mortar retailers as a result of them, make it particularly likely they will return to the Websites in the future to purchase goods from the comfort of their homes, or testing the Websites for compliance.

35.     If the Website were accessible—i.e. if Otter Products removed the access barriers described above—Plaintiffs could independently shop for and research products via Otter Products' Websites.

36.     Though Otter Products has centralized policies regarding the maintenance and operation of its Websites, Otter Products has never had a plan or policy that is reasonably calculated to make its Websites fully accessible to, and independently usable by, individuals with

vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

37.     The law requires that Otter Products reasonably accommodate Plaintiffs' disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

38.     Plaintiffs' above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited May 23, 2017).

39.     All parties have been, and in the absence of an injunction will continue to be, injured by Otter Products' failure to provide its online content and services in a manner that is compatible with screen reader technology.

**III.     Prior Notice to Otter Products**

40.     Otter Products knew or should have known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

41.     Indeed, as the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts, it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public

accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

**IV.   The Parties have No Administrative Remedies to Pursue.**

42.   There is no DOJ administrative proceeding that could provide Plaintiffs with Title III injunctive relief.

43.   While the DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiffs with relief.

44.   Plaintiffs allege violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

45.   Resolution of Plaintiffs' claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Otter Products offers content and services on its Websites, and (b) whether Plaintiffs can access the content and services.

<u>**SUBSTANTIVE VIOLATION**</u>
<u>**(Title III of the ADA, 42 U.S.C. § 12181 *et seq*.)**</u>

46.   The assertions contained in the previous paragraphs are incorporated by reference.

47.   Otter Products' Websites are a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

48.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Otter Products does not provide Plaintiffs with full and equal access to its Websites, it has violated the ADA.

49.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. Id.; see also MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

50.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

51.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

52.     In order to be effective auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations

14

should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

53.     By failing to provide its Websites' content and services in a manner that is compatible with auxiliary aids, Otter Products has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Otter Products, LLC's Websites;

(b)     affording individuals with visual disabilities access to the Websites that is not equal to, or effective as, that afforded to others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)     denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)     failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

54.     Otter Products has violated Title III by, without limitation, failing to make its Websites' services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of those Websites, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

55.     Otter Products has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Websites to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

56.     Making its online goods, content, and services compatible with screen reader programs does not change the content of Otter Products' Website or result in making the Websites different, but rather enables individuals with visual disabilities to access the Websites Otter Products already provides. See MIT Statement of Interest, p. 20; Harvard Statement of Interest, p. 20.

57.     Otter Products' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and other individuals with visual disabilities.

58.     Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

59.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.     A Declaratory Judgment that at the commencement of this action Otter Products, LLC was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Otter Products, LLC took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, individuals with visual disabilities;

2.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Otter Products, LLC to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Otter Products, LLC has adopted and is following an institutional policy that will in fact cause Otter Products, LLC to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in paragraph 9 above.

3.      Payment of costs of suit;

4.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

5.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: May 25, 2017                    Respectfully Submitted,

/s/ Jason M. Leviton
Jason M. Leviton (BBO# 678331)
Block & Leviton LLP
155 Federal Street, Suite 400
Boston, MA 02110
Phone: (617) 398-5600
jason@blockesq.com

Benjamin J. Sweet (PA Bar No. 87338)
bsweet@carlsonlynch.com
*Pro Hac Vice* admission to be sought
Kevin W. Tucker (PA Bar No. 312144)
ktucker@carlsonlynch.com
*Pro Hac Vice* admission to be sought
CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222

17

Phone: (412) 322.9243

*Counsel for Plaintiffs Access Now, Inc., R. David New, and Stephen Théberge*