**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

```
_____
                              )
ACCESS NOW, INC., R. DAVID NEW,)
and STEPHEN THÉBERGE           )
            Plaintiffs,       )
                              )
                              )
v.                            )     Civil Action
                              )     No. 17-10967-PBS
OTTER PRODUCTS, LLC,          )
            Defendant.        )
_____)
```

**MEMORANDUM AND ORDER**

December 4, 2017

SARIS, Chief U.S.D.J.

Plaintiff,[1] Stephen Théberge, who is blind, brings this action against Otter Products, LLC ("Otter"), a producer of consumer electronics accessories, alleging its websites violate Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* Théberge has attempted to use Defendant's website

---

[1] Initially, there were three plaintiffs: Théberge, Access Now, and R. David New. At the hearing, plaintiffs acknowledged that the two out-of-state plaintiffs (Access Now and New) do not have a basis for asserting personal jurisdiction over Otter. They will be dismissed without prejudice. See Bristol-Myers Squibb Co. v. Superior Ct. of Calif., 137 S. Ct. 1773, 1780-81 (2017) (holding that nonresident plaintiffs could not survive the personal jurisdiction inquiry by bootstrapping their claims to those of resident plaintiffs).

1

to no avail due to the incompatibility of the websites with his screen reader. The Defendant filed a motion to dismiss for lack of personal jurisdiction or, in the alternative, for improper venue. (Document No. 5). Alternatively, Otter requests that the case be transferred to the District of Colorado. After hearing, this Court **DENIES** the motion to dismiss for lack of personal jurisdiction with respect to Plaintiff Stephen Théberge, and **DENIES** the motion to dismiss or transfer based on improper venue.

## I. FACTUAL BACKGROUND

When all reasonable inferences are drawn in favor of the non-moving party, Plaintiff alleges the following facts in his complaint and declaration.

### A. Stephen Théberge

Stephen Théberge is a blind Massachusetts resident who suffers from glaucoma and cataracts. He relies on screen-reader programs which convert website text to audio. Screen-reader software provides the primary method by which a blind person may independently use the Internet and without these programs, blind and visually impaired individuals cannot access the Internet. Théberge attempted to access Otter's websites from Massachusetts but found them unusable in light of many barriers to access. For example, he alleges that many of the buttons on the websites are improperly labeled or not labeled at all, making them

incompatible with the screen-reader programs and unusable to him. Plaintiff would like to, and intends to, attempt to access Otter Products' website in the future from the comfort of his home.

**B.     Otter[2]**

Otter is a consumer electronics accessory company and makes sales through two websites, www.otterbox.com and www.lifeproof.com. Through different brands, it produces water resistant, shock resistant, and drop resistant cases for mobile devices. It is headquartered in Fort Collins, Colorado but has one employee in Massachusetts.

Otter's direct sales to consumers are made through its websites, which are managed from its headquarters in Fort Collins, Colorado, and its satellite office in San Diego, California. Most of Otter's employees are in one of these two offices, but it has a field marketing representative in Massachusetts who visits retail outlets in the region. Two percent of Otter's online sales were made in Massachusetts in 2017; however, Otter does not engage in targeted marketing campaigns directed at Massachusetts residents.

---

[2] Otter submitted the Declaration of Michael Soderholm, its Vice President of Marketing, which contained the facts relevant to personal jurisdiction and venue. Docket No. 5-1.

## II. STANDARD OF REVIEW

When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the prima facie standard governs its determination. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). The prima facie standard requires the plaintiff to "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (internal citations omitted). Moreover, the burden of persuasion is on the plaintiff. The Court "must accept the plaintiff's (properly documented) evidentiary proffers as true" and "construe them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007) (internal quotation marks and citations omitted). The facts put forward by the defendant become "part of the mix only to the extent that they are uncontradicted." Id. The Court will consider the facts in the defendant's declarations, which are uncontradicted.

## III. DISCUSSION

**A. Personal Jurisdiction**

4

Théberge, who lives in Attleboro, Massachusetts, asserts that this Court has "specific jurisdiction" over Otter because he was injured in Massachusetts when he could not access its websites to purchase goods. For "specific" or "case-linked jurisdiction" to apply, the suit must arise out of or relate "to the defendant's contacts with the *forum*." Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1780 (2017). When exercising specific jurisdiction over a defendant, the court must "find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process clause." Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995).

### 1. The Massachusetts Long-Arm Statute

Plaintiff contends the long-arm statute is coextensive with the Due Process clause of Fourteenth Amendment of the United States Constitution and therefore the Court should move directly to the Due Process analysis. The Defendant argues the state long-arm statute does not reach as far as the Constitution permits and asks the Court to assess whether the jurisdiction meets the statutory requirements. The Defendant has the better of the argument. The Supreme Judicial Court recently addressed this issue: "Because the long-arm statute imposes specific constraints on the exercise of personal jurisdiction that are not coextensive with the parameters of due process, and in order

5

to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question." See SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017).

The long-arm statute, Mass. Gen. Laws ch. 223A, § 3(a), permits a court to "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." The definition of "transacting" is construed broadly under Massachusetts law. United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992) ("Both federal and state courts have regularly construed the 'transacting any business' language of the statute in a generous manner."); Diamond Grp., Inc. v. Selective Distribution Int'l, Inc., 998 N.E.2d 1018, 1022 (Mass. 2013) ("We interpret ["any" in the statute] to be expansive, or to mean that the volume of business need not be substantial but merely definite and perceptible."). The test for this determination is whether the defendant attempted to participate in the Commonwealth's economic life and whether the transacted business was a "but for" cause of the harm. See Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).

Under Section 3(a), the "arising from" requirement must also be met. "[A] claim arises from a defendant's transaction of business in the forum State if the claim was made possible by, or lies in the wake of, the transaction of business in the forum State." Tatro v. Manor Care, Inc., 625 N.E.2d 549, 553 (Mass. 1994). The inquiry ultimately boils down to a "but for" causation test which asks "[d]id the defendant's contacts with the Commonwealth constitute 'the first step in a train of events that result[ed] in the personal injury.'" Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 114 (1st Cir. 1997) (quoting Tatro, 625 N.E.2d at 553). The standard is not rigorous. See Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 n.3 (1st Cir. 2016).

Plaintiff has presented sufficient evidence to support a finding that Otter transacted business under the long-arm statute. While the percentage of total sales in Massachusetts is small (two percent), this represents about $20 million in sales. Otter has a field marketing representative in Massachusetts. It has also been registered to do business in the state since December 2013. In similar situations, the Court has found the "transacting of business" element met for purposes of the long-arm statute. Cossart, 804 F.3d at 18 (finding jurisdiction when defendant recruited and hired a Massachusetts resident as an employee; registered a sales office with the Commonwealth in

7

order to facilitate work for the company; and retained plaintiff as a Massachusetts-based employee for a period of years); Edwards v. Radventures, Inc., 164 F. Supp. 2d 190, 194 (D. Mass. 2001) (finding that $12,000 in sales to state citizens, a website through which Massachusetts sales were solicited, and a Massachusetts sales location was sufficient to establish the "transacting business" prong).

The next step is to determine whether the "arises from" requirement is met. The complaint alleges that the websites limit accessibility to consumers who are visually impaired and can only purchase products through the website. Decl. of Michael Soderholm ¶ 5. In other contexts, courts have held that under the ADA, a disabled individual suffers harm when she encounters a barrier that denies her access. Cf. Chapman v. Pier I Imports (U.S) Inc., 631 F.3d 939, 950-51 (9th Cir. 2011) (en banc) (holding a disabled plaintiff who is deterred by a barrier from "patronizing" a store suffers an injury-in-fact); Dudley v. Hannaford Bros. Co., 333 F.3d 299, 305 (1st Cir. 2003) ("Under Title III of the ADA, courts typically have gauged the discriminatory effect of a policy or practice by the degree to which that policy or practice denies access to a disabled individual."); Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1136–37 (9th Cir. 2002) ("Thus, under the ADA, once a plaintiff has actually become aware of discriminatory conditions

existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.").

Because the harm—the denial of access to the website— occurred in the Commonwealth, the injury arises from Otter's transaction of business via its website in the Commonwealth.

Otter argues that Section 3(a) is inapplicable because Plaintiff accessed the website to test it, not to actually "transact" business by buying an Otter product. In other words, in Defendant's view, testing a website for accessibility is not a "transaction" under the long-arm statute. The Defendant cites no caselaw to support its contention that a disabled plaintiff seeking access to a site as a tester rather than a prospective purchaser is not injured in the context of a disability case. In any event, Plaintiff does not even have to attempt a purchase if the attempt would be a "futile gesture." 42 U.S.C. § 12188 ("Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.") Therefore, this prong is met and jurisdiction can be found under Mass. Gen. Laws ch. 223A, § 3(a).[3]

---

[3] Because there is jurisdiction under Section 3(a), the Court does not address Section 3(d).

### 2. Due Process

The First Circuit employs a three-part analysis to determine whether there are sufficient contacts between the defendant and the forum state to exercise specific personal jurisdiction over a defendant:

> In determining whether the exercise of specific jurisdiction over an out-of-state defendant conforms to the constitutional limits established by the Due Process Clause, we evaluate (1) whether the claim directly arises out of, or relates to, the defendant's forum state activities; (2) whether the defendant's in-state contacts represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable; and (3) whether the exercise of jurisdiction is reasonable.

Cossart, 804 F.3d at 20 (internal citation omitted). A claim that arises out of the forum activities is one in which there is "'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Bristol-Myers Squibb Co., 137 S. Ct. at 1780 (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2017)).

Determining whether a defendant purposefully availed itself of the forum state's economic activities is based on whether a defendant has "'deliberately target[ed] its behavior toward the society or economy of a particular forum [such that] the forum

10

should have the power to subject the defendant to judgment regarding that behavior.'" Baskin–Robbins Franchising LLC, 825 F.3d at 36 (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)). The "'key focal points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016) (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)).

Finally, the reasonableness of exercising jurisdiction is assessed in light of the "Gestalt" factors which include "(1) the defendant's burden of appearing [in the forum state], (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Baskin–Robbins, 825 F.3d at 40.

Here, the long-arm statute analysis addresses the due process challenge under the relatedness and purposeful availment prongs. There is little question that Otter "deliberately target[ed] its behavior toward the society or economy of [Massachusetts such that] the forum should have the power to subject the defendant to judgment regarding that behavior."

11

Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011). Moreover, the harm -- the barred access to the website -- occurred here.[4]

The reasonableness factors are of great consequence in cases involving the Internet, which has allowed commercial transactions to occur at the click of a button. For example, in Photographic Illustrators Corp. v. A.W. Graham Lumber, LLC, a copyright case, this Court held that the exercise of personal jurisdiction would not be reasonable under the "Gestalt" factors. 196 F. Supp. 3d 123, 131 (D. Mass. 2016). That case is easily distinguishable. There, the defendant was a small, family-owned hardware store in Kentucky, which sold lighting fixtures advertised with a picture on the website. The defendant had made one sale of a shovel to Massachusetts in the preceding eleven years, which occurred two weeks after the complaint was filed. Moreover, the defendant had a brick-and-mortar store in Kentucky, where it was registered to do business and conducted most of its consumer transactions. Under those circumstances,

---

[4] Several courts have held that a website can be treated as a public accommodation under Title III of the ADA. See Carparts Distrib. Ctr., Inc. v. Auto. Wholesaler's Ass'n of New England, Inc., 37 F.3d 12, 19 (1st Cir. 1994) (concluding public accommodations need not have physical structures); Nat'l Fed'n of the Blind v. Scribd Inc., 97 F. Supp. 3d 565, 574-75 (D. Vt. 2015); National Ass'n of the Deaf v. Netflix, Inc., 869 F. Supp. 2d 196, 201 (D. Mass. 2012) (holding that company's website was a place of public accommodation).

the Court held it was unreasonable for Massachusetts to exercise jurisdiction over the Kentucky defendant.

In this instance, though, exercising jurisdiction over Otter would be fair and reasonable under the "Gestalt" factors. First, Defendant's burden of appearing in Massachusetts is slight. To meet this requirement, Otter would have to demonstrate a special or unusual burden, and cross-country travel for a multi-billion dollar company such as Otter hardly qualifies. Baskin-Robbins, 825 F.3d at 40 ("Where . . . parties of substantial means are involved, cross-country travel ordinarily does not qualify as a special or unusual burden."). Second, Massachusetts has a strong and historic interest in adjudicating this dispute involving its blind residents. It is the home of the Perkins School for the Blind, which was America's first school for the blind. Helen Keller was taught there. Third, Théberge has an interest in obtaining convenient and effective relief. He is a resident of the state and "courts regularly cede some deference to the plaintiff's choice of forum." Id. The fourth factor—the judicial system's interest in obtaining the most effective resolution of the controversy—is neutral. Finally, the Defendant argues that Plaintiff's attempt at forum shopping should direct the courts to find the fifth factor—the common interests of all sovereigns in promoting substantive social policies—in the Defendant's favor. However,

Plaintiff is a Massachusetts resident and in his home forum, so exercising jurisdiction in this instance would be fair, reasonable, and consistent with the requirements of Due Process under the United States Constitution.

In sum, the Court concludes it has personal jurisdiction over Otter under both the long-arm statute and the Due Process clause.

### B. IMPROPER VENUE

The Defendant seeks to dismiss or transfer this action to Colorado pursuant to Fed. R. Civ. P. 12(b)(3). Venue is proper when a case is filed in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391. The Court looks to the "entire sequence of events underlying the claim," not just the "single triggering event." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (quoting Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001)). Although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in this District. See Siegel v. Homestore, Inc., 255 F. Supp. 2d 451, 456 (E.D. Pa. 2003) (finding venue proper when all defendant's business was conducted entirely over the Internet).

14

**C. TRANSFER OF VENUE**

Alternatively, Defendant asks the Court, in its discretion, to transfer the case to the District of Colorado. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). However, there is a strong presumption in favor of the plaintiff's choice of forum. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947) (stating "a plaintiff's choice of forum should rarely be disturbed").

Otter makes three arguments as to why its motion for transfer should be granted: (1) the burden or inconvenience posed by litigating the case in Massachusetts; (2) the location of the witnesses, with most being located in Colorado; and (3) the forum shopping of the Plaintiffs which is meant to promote a national agenda. As for the burden of litigating the case in Massachusetts, "[t]ransfer of venue is inappropriate . . . where its effect merely shifts the inconvenience from one party to another." See, e.g., Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 18 (D. Mass. 2002). Although many of the witnesses may be out of state, transfer of venue in this instance would merely shift the burden to a blind individual plaintiff. Finally, the concern over forum shopping

15

in this case is limited by the fact that the remaining Plaintiff is a forum resident alleging an in-state injury. Therefore transfer is not appropriate in this instance.

### **ORDER**

1. The Court **ALLOWS** without prejudice the motion to dismiss for lack of personal jurisdiction with respect to Plaintiffs Access Now and David New. The Court **DENIES** the motion to dismiss for lack of personal jurisdiction with respect to Plaintiff Théberge. (Docket No. 5)

2. The Court **DENIES** the motion to dismiss for improper venue and **DENIES** the motion for transfer. (Docket No. 5)

SO ORDERED.

/s/ PATTI B. SARIS            .
Patti B. Saris
Chief U.S. District Judge